# CIVIL COVER SHEET

A-13-688129-C

### Clark County, Nevada

Case No. _____
*(Assigned by Clerk's Office)*

## I. Party Information

Plaintiff(s) (name/address/phone): Robert Williamson, III, and Vicki's Vodka, LLC

Attorney (name/address/phone):

H. Stan Johnson, Esq., Cohen-Johnson, LLC,

255 E. Warm Springs Road., Ste. 100, Las Vegas, NV 89119

Defendant(s) (name/address/phone): Victoria L. Gunvalson, David Brooks Ayers, Michael Nicholson, Cougar Juice Vodka, LLC, Sweetwaters Distillers, Inc. dba Stillwater Spirits, Woo Hoo Productions, LLC, Does 1 through 10, and Row Entities, 1 through 10

Attorney (name/address/phone):

## II. Nature of Controversy (Please check applicable bold category and applicable subcategory, if appropriate)

☐ **Arbitration Requested**

### Civil Cases

| Real Property | Torts | |
|---|---|---|

**Real Property**

**Torts**

**Negligence**

☐ **Landlord/Tenant**
  ☐ Unlawful Detainer
☐ **Title to Property**
  ☐ Foreclosure
  ☐ Liens
  ☐ Quiet Title
  ☐ Specific Performance
☐ **Condemnation/Eminent Domain**
☐ **Other Real Property**
  ☐ Partition
  ☐ Planning/Zoning

☐ **Negligence – Auto**
☐ **Negligence – Medical/Dental**
☐ **Negligence – Premises Liability**
  *(Slip/Fall)*
☐ **Negligence – Other**

☐ **Product Liability**
  ☐ Product Liability/Motor Vehicle
  ☐ Other Torts/Product Liability
☐ **Intentional Misconduct**
  ☐ Torts/Defamation (Libel/Slander)
  ☐ Interfere with Contract Rights
☐ **Employment Torts** (Wrongful termination)
☐ **Other Torts**
  ☐ Anti-trust
  ☐ Fraud/Misrepresentation
  ☐ Insurance
  ☐ Legal Tort
  ☐ Unfair Competition

**Probate**

**Other Civil Filing Types**

Estimated Estate Value: _____

☐ **Summary Administration**
☐ **General Administration**
☐ **Special Administration**
☐ **Set Aside Estates**
☐ **Trust/Conservatorships**
  ☐ Individual Trustee
  ☐ Corporate Trustee
☐ **Other Probate**

☐ **Construction Defect**
  ☐ Chapter 40
  ☐ General
☒ **Breach of Contract**
  ☐ Building & Construction
  ☐ Insurance Carrier
  ☐ Commercial Instrument
  ☒ Other Contracts/Acct/Judgment
  ☐ Collection of Actions
  ☐ Employment Contract
  ☐ Guarantee
  ☐ Sale Contract
  ☐ Uniform Commercial Code
☐ **Civil Petition for Judicial Review**
  ☐ Foreclosure Mediation
  ☐ Other Administrative Law
  ☐ Department of Motor Vehicles
  ☐ Worker's Compensation Appeal

☐ **Appeal from Lower Court** *(also check applicable civil case box)*
  ☐ Transfer from Justice Court
  ☐ Justice Court Civil Appeal
☐ **Civil Writ**
  ☐ Other Special Proceeding
☐ **Other Civil Filing**
  ☐ Compromise of Minor's Claim
  ☐ Conversion of Property
  ☐ Damage to Property
  ☐ Employment Security
  ☐ Enforcement of Judgment
  ☐ Foreign Judgment – Civil
  ☐ Other Personal Property
  ☐ Recovery of Property
  ☐ Stockholder Suit
  ☐ Other Civil Matters

## III. Business Court Requested (Please check applicable category; *for Clark or Washoe Counties only.*)

☐ NRS Chapters 78-88
☐ Commodities (NRS 90)
☐ Securities (NRS 90)

☐ Investments (NRS 104 Art. 8)
☐ Deceptive Trade Practices (NRS 598)
☐ Trademarks (NRS 600A)

☐ Enhanced Case Mgmt/Business
☐ Other Business Court Matters

| 09/06/2013 | /s/ H. Stan Johnson, LLC |
|---|---|
| Date | Signature of initiating party or representative |

Electronically Filed
09/06/2013 04:24:06 PM

**COHEN-JOHNSON, LLC**
H. STAN JOHNSON
Nevada Bar No. 00265
sjohnson@cohenjohnson.com
BRIAN A, MORRIS, ESQ.
Nevada Bar No. 11217
bam@cohenjohnson.com
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
Telephone: (702) 823-3500
Facsimile: (702) 823-3400
*Attorneys for Plaintiffs*

**CLERK OF THE COURT**

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

ROBERT WILLIAMSON, III, an individual,
VICKI'S VODKA, LLC, a Nevada limited
liability company,

                            Plaintiffs,

vs.

VICTORIA L. GUNVALSON, an individual;
DAVID BROOKS AYERS, an individual;
MICHAEL NICHOLSON, an individual;
COUGAR JUICE VODKA, LLC, a California
limited liability company; SWEETWATERS
DISTILLERS, INC., dba STILLWATER
SPIRITS; WOO HOO PRODUCTIONS, LLC, a
California limited liability company; DOES 1
through 10; ROE ENTITIES, 1 through 10,

                            Defendants.

Case No.: A - 1 3 - 6 8 8 1 2 9 - C

Dept. No.:   X I V

**VERIFIED COMPLAINT**

Plaintiffs, ROBERT WILLIAMSON, III and VICKI'S VODKA, LLC, file this original

complaint against VICTORIA L. GUNVALSON, DAVID BROOKS AYERS, MICHAEL

NICHOLSON, COUGAR JUICE VODKA, LLC, SWEETWATERS DISTILLERS, INC., dba

STILLWATER SPIRITS and WOO HOO PRODUCTIONS, LLC, and hereby allege as follows:

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

## THE PARTIES

1.     Plaintiff, ROBERT WILLIAMSON, III, hereinafter referred to as ("RW III"), is a resident of Clark County, Nevada.

2.     Plaintiff, VICKI'S VODKA, LLC, hereinafter, referred to as ("VV"), is a Nevada limited liability company.

3.     Defendant, VICTORIA L. GUNVALSON, hereinafter referred to as ("Vicki"), is an individual believed to be residing in Orange County, California.

4.     Defendant, DAVID BROOKS AYERS, hereinafter referred to as ("Brooks"), is an individual believed to be residing in Orange County, California

5.     Defendant, MICHAEL NICHOLSON, hereinafter referred to as ("Nicholson"), is an individual believed to be residing in Napa County, California.

6.     Defendant, COUGAR JUICE VODKA, LLC, hereinafter referred to as ("CJ"), is a California limited liability company.

7.     Defendant, SWEETWATERS DISTILLERS, INC., dba STILLWATER SPIRITS, hereinafter referred to as ("SW"), is a California corporation.

8.     Defendant, WOO HOO PRODUCTIONS, LLC, herein referred to as ("Woo Hoo"), is a California limited liability company.

9.     Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 10 and ROE ENTITIES 1 through 10 and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities when same have been ascertained. Plaintiffs are informed and believe, and thereupon allege, that each of such fictitiously-named Defendants is responsible in some manner, including but not limited to acting with the purpose and scope of such agency, authority and/or employment.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court because most if not all of Defendants'

wrongful conduct occurred in Clark County, Nevada. One or more of the agreements relevant to events giving rise to this Complaint were negotiated or executed in Nevada. The parties named herein met and conducted business in Clark County, Nevada.

11. Jurisdiction is also proper in that damages incurred by the Plaintiffs exceed $10,000.00.

12. Further the Court has subject matter jurisdiction pursuant to Article VI of the Nevada Constitution, and personal jurisdiction over the Defendants in accordance with NRS 14.065, on the grounds that such jurisdiction is not inconsistent with the Nevada Constitution or the United States Constitution.

13. Venue is proper in the Eighth Judicial District Court in accordance with the NRS 13.010 and NRS 13.040.

## GENERAL ALLEGATIONS

14. During the time period beginning on or about May 2012, Plaintiff RW III entered into negotiations with Vicki to start a business that would be based on vodka, which would be distributed and sold under the name Vicki's Vodka.

15. To this end a meeting was held on June 3, 2012 in Las Vegas, Nevada in a conference room located at the residence of RW III. Present were: Victoria L. Gunvalson, Robert Williamson III, David Brooks Ayers and Michael Nicholson. The meeting took place for approximately three hours, during which the following was discussed, delegated and confirmed: business plan, roles in the business, capital infusion and other points of business. All of this is documented in minutes and notes from the June 3rd meeting. A copy of the June 3rd minutes and notes are attached hereto as Exhibit 1.

16. Among other things Vicki agreed to:

a. Wire $12,500 into the account of Vicki's Vodka, LLC by 6-9-12 and an additional $12,500 by the end of June 2012.

b. Contact Brad to trademark Woo Hoo and advise the board when that is done.

c. Contact her PR Company to discuss a press release to be wired out no later

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

than 7-1-12.

    d.    Contact Puerto Vallarta Cigar Factory to discuss distribution to US for online customers for Vicki's Cigars.

    e.    Other commitments which Vicki made to the promotion of the brand Vicki's Vodka, ("VV") which included all efforts to promote and market VV on the show The Real Housewives of Orange County and any other opportunities for marketing and promotion.

17.    Based upon the promises and agreements made at the June 3rd meeting and other meetings, phone calls, emails and texts RW III moved ahead with the business known as Vicki's Vodka.

18.    On or about July 20, 2012 another meeting was held in Las Vegas, Nevada to further the business of Vicki's Vodka. In attendance were: Ken Kamp, Brooks Ayers, Michael Nicholsen, Vicki Gunvalson, Cate Williamson and Robert Williamson. Additional assignment, agreements and promises were made. At this meeting it was specifically agreed, represented and promised that Vicki would negotiate her season 8 contract to include VV as part of the negotiations and product integration and that RW III would be on Andy Cohen's show, Watch What Happens Live, with him as the bar tender.

19.    Based upon the representations, agreements, and promises of Vicki and Brooks; RW III moved forward and expended substantial funds and made commitments in excess of $300,000.00.

20.    Later Michael Nicholson relinquished his interest in the company, when it was learned that Nicholson had misused and/or could not account for, company funds. Going forward, it was understood and agreed that the company was to be owed by 50/50 by Vicki and RW III.

21.    It was learned later that Vicki, without the knowledge or approval of RW III, gave Brooks 16.67% of her member interest in Vicki's Vodka, LLC. This made the ownership of the LLC: Vicki 33.3 %; Brooks 16.7% and RW III 50 %.

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

**Fraud In The Inducement**

22.   On or about March of 2013, while RW III was in Clark County, Nevada, Brooks approached RW III and disclosed his ownership interest in the LLC and asked RW III to purchase his interest for the sum of $50,000.00; he claimed to need the money for unpaid IRS and child support obligations in order to prevent his imminently going to jail for non-payment.

23.   On numerous occasions Vicki encouraged RW III to purchase Brooks interest; stating that it would be in the company's best interest.  An agreement was reached, while RW III was in Clark County, Nevada, for the purchase of Brooks' interest for the sum of $50,000.00 which is memorialized in writing in an agreement dated March 6th 2013.   A copy of this agreement is attached as Exhibit 2.

24.   Upon information and belief, it was learned later that Brooks and Vicki had used this purchase as a way to obtain additional money from RW III in bad faith without the intent to honor the intent of the transaction, which was that RW III would then own 66.7 % of the LLC.

25.   Later Vicki demanded that the ownership be returned to 50/50 even though she had acknowledged and signed Exhibit 2 and upon information and belief, she had received part of the money from Brooks.

26.   Upon information and belief, it was the intent of Brooks and Vicki to lure RW III into the purchase of the Brooks interest without the good faith intent to move forward with the company and make it successful.

27.   Brooks and Vicki intended that RW III would spend the additional money to buy Brooks' interest, which they knew to be worth substantially less than the $50,000 because they did not intend to use their good faith efforts to make the company successful.

28.   In fact, Vicki issues a cease and desist letter. Attached herein as Exhibit 3.

29.   In fact following the purchase of the interest from Brooks; there has been a total lack of co-operation or effort by Vicki to promote VV and to make it successful.

30.   During the meetings in Clark County, Nevada, Vicki made numerous statements and representations that she would make herself available for personal appearances as much as possible and use all efforts to publically promote VV.

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

31.     In addition, to the promises and representations made at the meetings held in Clark County, Nevada; Vicki reaffirmed these representations and Promises numerous times by phone, email and texts.

## Defamation by Brooks

32.     Furthermore, late in June of 2013, Brooks contacted Doug Dreisbach ("Doug") via telephone.

33.     Doug is the organizer of an annual charity event, co-founded by RW III, which is called "Derby Poker Championship." ("DPC")

34.     This charity holds an annual event, with over 1,000 attendees, in conjunction with the Kentucky Derby.

35.     Proceeds of the event are donated to various charities; including, Blessings in a Backpack and the Susan G. Coleman Foundation.

36.     Brooks represented to Doug that RW III is under investigation for embezzlement.

37.     Brooks further represented that RW III had embezzled funds from DPC.

38.     When confronted about the fact that RW III does not have access to or handles funds for this entity, Brooks insisted that RW III found a way.

39.     There is no record of or possibility that RW III accessed any funds from DPC.

## Civil Extortion

40.     Furthermore, Brooks and others, devised and executed a plan to extort money from RW III.

41.     Brooks devised this plan by using an acquaintance ("ACQ") of RW III as a pawn.

42.     The basis for the extortion was a false story wherein Brooks told RW III that ACQ was going to tell RW III's wife that they were having an affair if RW III did not provide funds to ACQ.

43.     Initially, not knowing what to do, RW III gave Brooks the requested amount of funds.

44. As it turns out, it was determined that ACQ never made the alleged threats.

45. Furthermore, a large portion of the funds was personally retained by Brooks for his own benefit.

46. Eventually, RW III learned of the scheme and ceased making payments to Brooks for the benefit of ACQ.

**Fraudulent Representations Of Nicholson**

47. In order to induce Plaintiffs to enter into certain agreements and to make payments for alleged work and services, Michael Nicholson made false representations, statements and omissions, which include, but are not limited to:

A. That Nicholson and/or CJ were licensed distillers that could produce, manufacture and distribute the entire product for VV.

B. That Nicholson would develop and formulate the vodka and recipes for VV and that VV would be the owner of this intellectual property.

C. That Nicholson would obtain the necessary licenses for VV to enable VV to legally sell vodka across the country and on its website.

D. That Nicholson had in fact obtained the necessary licenses for VV by either transferring licenses from CJ or obtaining new licenses for VV.

E. That in exchange for certain periodic payments Nicholson would spend the bulk of his time working on the licensing and other business issues for VV.

F. That Nicholson had relinquished any ownership interest in VV.

G. That Nicholson and/or CJ had extensive experience in the production of Vodka and that Nicholson and/or CJ owned all the necessary equipment and expertise to produce the substantial amount of Vodka that would be necessary to support the sales of VV.

H. That Nicholson was the owner of SW, which would produce the vodka.

I. There are additional false representations that Plaintiffs believe were made and that as such become known Plaintiffs will seek leave of Court to amend this complaint to add such additional misrepresentations.

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

## Breach of the Settlement Agreement

48.    That on or about July of 2013 Vicki approached RW III and indicated that she wanted to settle certain pending litigation with RW III and move forward with VV.

49.    That during the weekend of July 12th Vicki and RW III met, without counsel, for extensive meetings and negotiations.  The result of these meetings was a Settlement Agreement attached hereto as Exhibit 4.

50.    That Vicki negotiated the agreement on the 13th and took a copy with her to review.  Vicki did not sign the agreement till the night of July 15th 2013.

51.    Following the execution of the agreement, RW III caused Vicki to be dismissed without prejudice for certain pending litigation pursuant to the Settlement Agreement.

52.    Almost immediately following the dismissal of Vicki from the federal litigation, Vicki disregarded the Settlement Agreement and breached the same.

53.    In addition to breaching the agreement following execution; Vicki made false statements and representations to induce RW III to enter into the Settlement Agreement.  Vicki represented that she would in good faith abide by the Settlement Agreement and use her best efforts to make VV successful.

54.    In reality, Vicki had no intention of abiding by the terms of the settlement agreement and had merely used the entire exercise as a means to solve certain problems, including her dismissal from the federal litigation.

55.    As soon as August 9th 2013 Vicki caused certain emails to be sent from her then counsel, Tony Abbatangelo, wherein Vicki began to assert positions contrary to the Settlement Agreement.

56.    On August 12th 2013, Vicki caused another email to be sent from Abbatangelo, wherein she claimed to owe no further funds under the Settlement Agreement, but also demanded the return of all money paid.  Such was a clear repudiation of the Settlement Agreement and showed her true hidden intent to not honor the Settlement Agreement.

57. On or about August 20th 2013, Vicki caused another letter to be sent from new counsel, threatening, among other things, to dissolve VV.

58. Not only did the new letter repudiate the Settlement Agreement, but also took the position that the three equal owners of VV were now, Cougar Juice Vodka, LLC; Woo Hoo Productions, Inc. and Robert Williamson.

59. This shows the deceptive intent of not only Vicki, but also Nicholson. It is clear from these actions that Vicki never intended to abide by the Settlement Agreement as shown by her subsequent legal positions and statements from counsel.

60. These statements regarding ownership of VV are false and are intended to deceive and to gain an advantage in Vicki's business relationship with RW III and to injure the business of VV and to cause harm and damage to RW III.

61. The trust is that Nicholson and CJ relinquished any ownership in VV on or about August of 2012. This is well known to Vicki since it is information she gave to another set of lawyers that represented her in June of 2013. Said letter is attached hereto as Exhibit 5. The same law firm makes it clear that following August of 2012 the ownership of VV was 50% Vicki and 50% RW III and that subsequent to August of 2012, Vicki gave to Brooks Ayers 16.67 % of her ownership, thereby reducing her ownership to 33.33 %.

62. The true ownership of VV and Vicki's knowledge of such is further set for in a Membership Interest Purchase Agreement attached hereto as Exhibit 2. In said agreement Brooks Ayers sold his 16.67 % interest of VV to RW III. Said agreement is Vicki acknowledges and agrees that she owns 33.33% of VV and that RW III has now purchased Brook Ayer's interest consisting of 16.67 %.

63. Since it is undisputed that Vicki knew the true ownership of VV and has intentionally misstated and represented that RW III is not the majority owner of VV; she has shown her true intent to not honor the Settlement Agreement and to harm the business of VV and specifically to damage RW III and for him to lose his investment in VV.

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

**Civil Conspiracy**

64.    From the beginning of RW III's involvement in VV, the Defendants, and each of them conspired to work in concert to obtain money from RW III and/or to deprive him of his ownership interest in VV.

65.    Defendants, and each of them, further conspired to cause RW III business, economic and reputation damage by statements made about RW III in person or by electronic means.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract as Against Vicki & Brooks)

66.    Plaintiffs hereby reallege and incorporate each and every allegation set forth above as if the same was more fully set forth herein.

67.    The Plaintiff RW III and Defendants, and each of them, entered into a binding oral Agreement on or about June 3, 2012; a written agreement dated March 6th 2013 and a written agreement dated July 15th 2013 (Vicki's Settlement Agreement).

68.    Plaintiff RW III has fully conformed and complied with each and every term, condition, provision and obligation required to be performed under and pursuant to the terms of the agreements.

69.    Defendants have not performed as required.

70.    Defendants, and each of them, have thereby breached the terms of the agreements by:

      a.    Failing to use all efforts to promote the products of Vicki's Vodka;

      b.    Failing to appear at events to promote the products;

      c.    Failing to promote the products in TV shows or other entertainment events;

      d.    Failure to promote the products on social media outlets including but not limited to twitter and facebook;

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

e.      Other breaches of the agreements, which will become known through

discovery.

71.    As a result of Defendants' failure to perform and honor the Agreements as set forth, the Plaintiff has been damaged in an amount in excess of Ten Thousand Dollars ($10,000.00).

72.    Plaintiff has been compelled to engage the services of an attorney to prosecute this action and is entitled to an award of attorney's fees and costs incurred herein.

## COUNT II
### (Breach of Covenant of Good Faith Dealing as Against Vicki and Brooks)

73.    Plaintiffs hereby reallege and incorporate each and every allegation set forth above as if the same was more fully set forth herein.

74.    The agreements reached in June of 2012; March of 2013 and July 15, 2013, constitute contractual agreements and thereby incorporate the implied covenant of good faith and fair dealing.

75.    Defendants owed a duty of good faith to the Plaintiff RW III.

76.    Defendants breached that duty by making false representations in a manner that was unfaithful to the purpose of the contract.

77.    The Plaintiff's justified expectations were denied.

78.    The breach of implied covenant and fair dealing by the Defendants has caused the Plaintiff to be damaged in an amount in excess of Ten Thousand Dollars ($10,000.00).

79.    Plaintiffs have been compelled to engage the services of an attorney to prosecute this action and on that basis are entitled to an award of attorney's fees and costs incurred herein.

## COUNT III
### (Misrepresentations, Fraud and Omissions as against All Defendants)

80.    Plaintiffs hereby reallege and incorporate each and every allegation set forth above as if the same was more fully set forth herein.

81.    That all of the misrepresentations and omissions set forth above were made to the

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

Plaintiffs, and relied on by Plaintiffs in making the purchase and investment described herein by RW III.

82.    These misrepresentations and omissions were material, and resulted in Plaintiffs being misled about the true nature of the investment. Plaintiffs relied in good faith on the misrepresentations and omissions to his detriment.

83.    That the Defendants knew or should that these representations were false.

84.    The result of these misrepresentations and omissions is that Plaintiffs were induced to purchase the Brooks interest and expend funds in excess of $300,000.00.

85.    Further, Defendants, and each of them, did not intend to abide by the agreement or other representations as set forth above; and because of such acts and misrepresentations of the Defendants and each of them, and the reliance thereon by Plaintiffs and Defendants, and each of them, having acted with malice toward the Plaintiffs, the Plaintiffs are entitled to recover punitive damages in an amount to be determined at trial.

86.    Plaintiffs have been compelled to engage the services of counsel to prosecute this action and are entitled to an award of attorney's fees and costs incurred herein.

## COUNT IV
### (Unjust Enrichment as Against All Defendants)

87.    Plaintiffs hereby reallege and incorporate each and every allegation set forth above as if more specifically set forth herein.

88.    Plaintiffs have complied with each and every term, condition, provision, obligation and covenant required to be performed by them under the Agreements.

89.    That the payments made resulted in gain to the Defendants, and each of them, and that the retention of this gain by the Defendants, and each of them, is unjust and inequitable.

90.    As a result of the actions of Defendants, and each of them, in retaining all of the funds paid to the Defendants, the Plaintiffs have been damaged and the Defendants, and each of them, have been unjustly enriched in a sum in excess of Ten Thousand Dollars ($10,000.00).

91.    Plaintiffs have been compelled to engage the services of an attorney to prosecute

this action and are entitled to an award of attorney's fees and costs incurred herein.

## COUNT V
### (Promissory Estoppel as Against All Defendants)

92.    Plaintiffs hereby reallege and incorporate each and every allegation set forth above as if the same was more fully set forth herein.

93.    The Defendants and each of them, during the course of their dealing with the Plaintiffs made certain representations and promises to the Plaintiffs which related to the Agreement between the parties as set above.

94.    The Plaintiffs have relied upon these promises as made by the Defendants, and each of them, to their detriment and has been damaged in an amount in excess of Ten Thousand Dollars ($10,000.00).

95.    The Defendants, and each of them, should be estopped from denying the existence of the Agreement and promises as set forth in the Agreement and orally between the parties as to the services to be performed under the Agreement between the parties.

96.    Plaintiffs have been compelled to engage the services of counsel to prosecute this action and on that basis, is entitled to an award of attorney's fees and costs of suit

## COUNT VI
### (Civil Conspiracy as Against All Defendants)

97.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this of this Complaint.

98.    Defendants, and each of them, conspired to take actions designed to obtain funds from RW III and to cause RW III to make significant expenditures which they knew would be worthless.

99.    As a result of this conspiracy RW III has been damaged in an amount in excess of Ten Thousand Dollars ($10,000.00).

100.    It has been necessary for Plaintiffs to retain the services of an attorney to bring this action, and Plaintiffs are entitled to an award of attorney's fees and costs.

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

## COUNT VII
### (Civil Extortion as Against Brooks)

101.   Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this of this Complaint.

102.   Brooks devised a scheme, using an acquaintance of RW III as a pawn, to extort funds from RW III.

103.   This scheme was successful, as RW III did in fact make the payments requested.

104.   As a result of this conspiracy RW III has been damaged in an amount in excess of Ten Thousand Dollars ($10,000.00).

105.   It has been necessary for Plaintiffs to retain the services of an attorney to bring this action, and Plaintiffs are entitled to an award of attorney's fees and costs.

## COUNT VIII
### (Slander as Against Brooks)

106.   Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this of this Complaint.

107.   Brooks called an associate of RW III and knowingly made false statement about RW III being involved in a serious crime involving moral turpitude.

108.   Were these allegations to be true, it would reflect negatively on RW III's character, morality, and integrity.

109.   As a result of this conspiracy RW III has been damaged in an amount in excess of Ten Thousand Dollars ($10,000.00).

110.   It has been necessary for Plaintiffs to retain the services of an attorney to bring this action, and Plaintiffs are entitled to an award of attorney's fees and costs.

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

**COUNT IX**
**(Intentional Infliction of Emotional Distress as Against All Defendants)**

111.   Plaintiffs repeat and reallege all allegations as set forth above and incorporate herein by reference each and every allegation made above as if fully set forth herein.

112.   Defendants, by their conduct, caused the Plaintiff RW III to suffer severe emotional distress.

113.   Plaintiff RW III alleges that the Defendants' conduct was outrageous under the circumstances and that Defendants knew and intended their conduct to be outrageous and injurious.

114.   Plaintiff RW III further alleges that the Defendants intended to cause Plaintiff's emotional distress.

115.   Plaintiff RW III further alleges that the Defendants acted with reckless disregard of the probability that Plaintiff RW III would suffer emotional distress, knowing the extreme damage to reputation that would result from their conduct.

116.   As a result of Defendants' conduct, Plaintiff RW III has been damaged in excess of $10,000.

117.   Plaintiffs have been required to retain the services of an attorney and are entitled to reimbursement of the attorney's fees and litigations costs involved in prosecuting this matter.

**COUNT X**
**(Attorney Fees)**

118.   Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this of this Complaint.

119.   As a direct result of the wrongful acts of the Defendants, the Plaintiffs have been required to bring this litigation to protect his rights and to recover damages.

120.   Therefore, Plaintiffs are entitled an award of attorney fees and/or special damages

1    and/or consequential damages for all attorney fees and costs expended and incurred in this

2    litigation.

3                                    **COUNT XI**

     **(Misappropriation and Conversion of Funds as Against Nicholson)**

4

5        121.    Plaintiffs incorporate by reference the allegations contained in all preceding

     paragraphs of this of this Complaint.

6

7        122.    Plaintiffs paid to Nicholson certain funds that were to be used for the benefit of

     VV.

8

9        123.    Nicholson did not use the funds for the intended purposes and instead used the

     funds for personal expenses or other unrelated business expenses.

10

11       124.    Despite repeated demands for an accounting of these funds or for the backup

     documentation for the payment of said funds, Nicholson has failed and refused to account for the

12

     funds or to provide the requested documentation.

13

14       125.    Due to the acts of Nicholson the Plaintiffs have been damaged in an amount in

     excess of Ten Thousand Dollars ($10,000.00).

15

16       126.    Due to the acts of Nicholson the Plaintiffs are entitled to punitive damages in an

     amount to be established at the time of trial.

17

18       127.    Plaintiffs have been required to retain the services of an attorney and are entitled

     to reimbursement of the attorney's fees and litigations costs involved in prosecuting this matter.

19

20                                    **PRAYER**

21       Plaintiffs respectfully ask the Court to enter judgment against Defendants, jointly and

22   severally, as follows:

23       1.      For compensatory damages in a sum according to proof at trial;

24       2.      For special damages in a sum according to proof at trial;

25       3.      For interest and pre-judgment interest at the statutory rate until the amount of

26   judgment is paid in full;

27       4.      For declaration that the contract between the parties was materially breached by

28

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

1    Defendants;

2        5.      For attorney's fees and costs of suit herein;

3        6.      For an award of punitive damages against the defendants, and each of them, in an

4    amount in excess of $10,000.00; and

5        7.      For such other and further relief as the Court may deem appropriate.

6        Dated this 6th day of September, 2013.

7

8

9                                        COHEN-JOHNSON, LLC.

10

11                              By: _____

12                                  H. Stan Johnson, Esq.
                                    Nevada Bar No. 00265
13                                  255 W. Warm Springs Rd., Suite 100
                                    Las Vegas, Nevada 89118
14                                  *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COHEN-JOHNSON, LLC**
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

## VERIFICATION

STATE OF NEVADA )
) ss.
COUNTY OF CLARK )

ROBERT WILLIAMSON, III, being duly sworn, states that he is the Plaintiff in the above entitled matter, that he has read the foregoing **VERIFIED COMPLAINT**, and that the same are true to the best of his knowledge, except as to the matters set forth upon information and belief, and as to those matters, he believe them to be true.

DATED this 6th day of September, 2013.

ROBERT WILLIAMSON, III

SUBSCRIBED AND SWORN to before me
this 6th day of September, 2013.

NOTARY PUBLIC, in and for said
County and State

H. STAN JOHNSON
Notary Public-State of Nevada
APPT. NO. 05-100907-1
My App. Expires October 25, 2013

COHEN-JOHNSON, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, Nevada 89119
(702) 823-3500 FAX: (702) 823-3400

Page 18 of 18

Exhibit 1

Minutes and Notes about:
Vicki's Vodka, LLC
June 3, 2012

In attendance:
Victoria L. Gunvalson, Robert Williamson III, David Brooks Ayers, Michael Nicholson

Meeting was held in Robert Williamson's condominium's conference room in Las Vegas, NV from 1-4pm. The 4 above people were in attendance to discuss business plan, roles, ownership, capital infusion as well as other important topics. The following was discussed, delegated and confirmed:

Titles of Vicki's Vodka executives will be as follows:                    Ownership:

1. Michael Nicholson                                                                33%
President/CEO

2. Victoria Gunvalson/Woo Hoo Productions, LLC                               33%
Chief Financial Officer (CFO)

3. Robert Williamson III                                                           34%
Chief Marketing Officer (CMO)

4. David Brooks Ayers
Chief Operating Officer (COO)

In addition, the following tasks/duties were discussed for the following:

1. Michael Nicholson:
Mike agrees to the following:
- No later than the end of this week, (6/9/12) Mike will obtain a Corporate EIN # from the State of CA and will open a new bank account at Bank of American for the Company Name: Vicki's Vodka, LLC.
- Mike will obtain email addresses for the following people:
    o Vicki@vickisvodka.com
    o Robert@vickisvodka.com
    o Mike@vickisvodka.com
    o Brooks@vickisvodka.com

- Mike will contact the website designer to design and implement "Vickisvodka.com" website and will have that up and running no later than 6/30/12
- Mike will contact the bottle designer and redesign the bottle based on the areas we discussed in the meeting
- Mike will talk with foil mfg about VV on the top instead of the grapes
- Mike will look and research facilities in Napa/Callastoga for future leasing for the entire bottling and distilling process
- Mike will finalize logo and distribute to all 3 owners plus Brooks

2. Victoria Gunvalson
   - Vicki agrees to wire $12,500 in the account of "Vicki's Vodka, LLC" in exchange of ½% ownership by the end of this week or 6/9/12.  Vicki will wire another $12,500 by the end of June for a total additional ownership of ½ for a total of $25,000 or 1%.
   - Vicki agrees to contact Brad to trademark Woo Hoo and will advise the Board when this will be completed.
   - Vicki will contract Puerto Vallarta Cigar Factor to discuss distribution to US for online customers for Vicki's Cigar's.
   - Vicki will contact her current PR company about discussing a press release to be wired online no later than 7/1/12.

3. Brooks Ayers –
   Brooks agrees to create a marketing and business plan, which will include the shareholders percentages along with the titles of the 4 parties, capital infusion.  We all agreed would like this business plan to be completed no later than 7/1/12 if not sooner.

4. Robert Williamson III
   - Robert invested $15,000 this date, plus $10,000 2 weeks ago to Mike Nicholson for capital infusion to Coujar Juice (aka: Vicki's Vodka) for a total of $25,000.  This investment from Robert to Mike is to allow Mike to proceed with website development, EIN application and to o Mike Nicholson to move Vickis Vodka into a position of production of product where it was not previously able to sustain
   - In return, Robert will acquire additional 1% for this $25k investment from the 20% investor's capital.

- Robert will proceed with existing merchandising and marketing contacts to implement the following:
  > Business cards
  > Clothing
  > Hats
  > Tshirts
  > Racer Back tank tops
  > Golf Shirts
  > Patches
  > Any other merchandise that Robert feels could be sold.

Exhibit 2

# MEMBERSHIP INTEREST PURCHASE AGREEMENT

THIS AGREEMENT made and entered into on this 6th day of March, 2013 by and among Robert Williamson, III, an individual (hereinafter referred to as the "Buyer") and David Brooks Ayers, an individual (hereinafter referred to as "Seller").

## WITNESSETH:

WHEREAS, Seller owns 16.67% of the membership interests in Vicki's Vodka, LLC, a California, limited liability company ("Company") (such membership interest is hereinafter referred to as the "Membership Interest"); and

WHEREAS, the Buyer is a member of the Company, and is familiar with the business, management, financial condition and operation of the Company;

WHEREAS, on the basis of the representations, warranties, covenants and agreements hereinafter made by the Seller, Buyer desires to purchase and acquire the Membership Interest from Seller; and, on the basis of the representations, warranties, covenants and agreements hereinafter made by Buyer, Seller desires to sell and transfer the Membership Interest to Buyer upon the terms and subject to the conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises made herein and the benefits to be derived from this Agreement, the parties hereto do hereby represent, warrant, covenant and agree as follows:

1. **Purchase; Release of Indebtedness.** On the terms and subject to the conditions and based upon the representations, warranties, covenants and agreements of the parties hereinafter set forth, Buyer hereby agrees to purchase from Seller and Seller hereby agrees to sell and deliver to Buyer, free and clear of all liens, pledges, liabilities, obligations, charges and encumbrances of every kind whatsoever, all of the Membership Interest, owed beneficially now or that maybe issued in the future under any currently existing agreement, which is currently 16.67 % of the member interests of the Company.

2. **Purchase Price.**

(a) The purchase price for the Membership Interest purchased under this Purchase Agreement shall be fifty thousand dollars ($50,000.00) dollars (the "Purchase Price"), to be paid as follows:

(1) by delivery of a check, cash or wired funds at the Closing (as defined in Paragraph 3 of this Agreement) to the Seller in the amount of $22,500.00 (the "Wire");

(2) by the forgiveness of five thousand dollars, which is owed currently from Seller to Buyer;



(3) by the payment of certain future expenses on behalf of Seller in the amount of $3,000.00 associated with the upcoming Kentucky Derby;

(4) by the payment of $8,000.00 on or before March 31st 2013; and

(5) by the payment of $11,500.00 on or before April 15th 2013.

3. **Closing.**

(a) The closing hereunder will take place upon the wiring of the down payment of $22,500.00, which shall occur as soon as possible following the full execution of the Agreement and upon proof satisfactory to Buyer that this Agreement has been fully executed. Such closing is hereinafter and hereinbefore sometimes referred to as the "Closing" and such time and date are hereinafter and hereinbefore sometimes referred to as the "Closing Date."

(b) At the Closing:

(1) Each individual or entity comprising the Seller shall deliver to Buyer one or more Assignments of Membership Interest, each in the form of Exhibit "A" attached hereto and made a part hereof, together with such endorsements, assignments and other instruments as, in the opinion of counsel to Buyer, are necessary for the purpose of vesting in Buyer good and valid title to the Membership Interest free and clear of all liens, charges and encumbrances.

(2) Buyer shall deliver to Seller the Check, cash or wire.

4. **Representations, Covenants, Agreements and Warranties by Seller.** The Seller, jointly and severally, hereby warrant and represent as follows:

(a) Seller has and will have at the Closing, full, lawful power and authority to enter into and to carry out the terms of this Agreement.

(b) Neither the execution nor delivery of this Agreement, nor the performance of Seller in consummating the transactions contemplated by this Agreement, will (1) conflict with or result in a violation or breach of, or constitute default under, any term or provision of any agreement or instrument to which Seller is a party or by which Seller is bound, or (2) result in the imposition of any lien, encumbrance, charge or claim upon the Membership Interest; and Seller has full power and authority to carry out all the terms, conditions and provisions of the transactions contemplated by this Agreement without the consent of any other person not a party hereto.

(c) No consent, approval or authorization of, or designation, declaration or filing, with any governmental authority is required in connection with the execution or delivery of this Agreement by Seller or the consummation by Seller of the transaction contemplated hereby.



(d) To the best of Seller's knowledge, there are no judgments, liens, actions, claims, orders, suits, proceedings or investigations pending, or in process, or threatened, that could materially affect Seller's right to enter into and consummate the transactions contemplated by this Agreement.

(e) Seller has legal title to the Membership Interest, free and clear of all liens, claims, pledges or encumbrances of any kind, nature or description arising by, through or under the Seller, with full and unrestricted legal power, authority and right to enter into this Agreement and the Security Agreement and to transfer and deliver the Membership Interest to Buyer pursuant hereto, and upon delivery of the Membership Interest to Buyer at the Closing, Buyer will be the owner of such Membership Interest and receive legal title to such Membership Interest, free and clear of all liens, claims, pledges or encumbrances of any kind, nature or description arising by, through or under the Seller.

(f) The Company is a limited liability company duly organized, validly existing and (to the best of Seller's knowledge) in good standing under the laws of the jurisdiction of its organization, and has all requisite power to own, lease and operate its properties and to carry on its business as now being conducted. The Membership Interest constitutes all of the Seller's right, title and interest in and to the Company. The Seller has not created, and is not aware of, any outstanding options, warrants, other securities, agreements or commitments pursuant to which any person has or may have the rights to acquire any or all of the Membership Interest or any other securities or any evidences of indebtedness of the Company, and to Seller's knowledge there are no existing agreements or arrangements which require or permit any of the Membership Interest to be voted by or at the direction of anyone other than the record owner thereof.

(g) To the best of Seller's knowledge, no action or proceeding at law or in equity is pending or threatened against the Company or any of its properties before any federal or state court or governmental commission, and no such proceeding is pending or threatened in arbitration or by or before any administrative agency wherein an unfavorable judgment, decision, ruling or finding would adversely affect the business, operations, assets, condition, financial or otherwise, of the Company. To the best of Seller's knowledge, there are no facts, events or occurrences by reason of which any such action or proceeding may be brought. To the best of Seller's knowledge, there are no judgments, consents, decrees, injunctions, or any other judicial or administrative mandates outstanding against the Company, and no petition in bankruptcy has ever been filed by or against the Company.

5. **Representations and Warranties of Buyer.** Buyer hereby represents and warrants as follows:

(a) Buyer has, and will have at the Closing, full lawful power and authority to enter into and to carry out the terms of, and all transactions contemplated by, this Agreement.



(b) Neither the execution nor delivery of this Agreement, nor the performance by Buyer of the transactions contemplated by this Agreement will (1) conflict with or result in a violation or breach of, or constitute a default under, any term or provision of any agreement or instrument to which Buyer is a party, or (2) result in the imposition of any lien, encumbrance, charge or claim upon any of Buyer's assets (other than the lien created by the Security Agreement), and Buyer has full power and authority to carry out all the terms, conditions and provisions of the transactions contemplated by this Agreement without the consent of any other person not a party hereto.

(c) No consent, approval or authorization of, or designation, declaration or filing, with any governmental authority is required in connection with the execution or delivery of this Agreement by Buyer or the consummation by Buyer of the transaction contemplated hereby.

(d) Buyer has not relied on any business representations or warranties of the Seller regarding the Company or Buyer's purchase of the Membership Interest and, together with Buyer's advisors, Buyer has the requisite knowledge and experience to understand the risks involved in the transactions contemplated by this Agreement.

(e) The Buyer is acquiring the Membership Interest for his own account for investment and not with a view to the distribution or with the present intention of selling, assigning or otherwise transferring any thereof. Buyer understands that the Membership Interest has not been registered under the Securities Act of 1933, as amended, and may not be sold, assigned or otherwise transferred without registration thereunder unless such sale, assignment or transfer does not involve a transaction requiring registration under the Securities Act of 1933, as amended.

6. **Conditions Precedent to Performance By Buyer.** The obligation of Buyer hereunder to purchase the Membership Interest pursuant to this Agreement is subject to the satisfaction at or prior to the Closing of all of the following conditions:

(a) Seller shall have performed and complied with all terms, covenants and conditions required by this Agreement to be performed or complied with at or before the Closing.

(b) All representations and warranties of Seller contained in this Agreement shall be true and correct at and as of the Closing, with the same force and effect as if such representations and warranties had been made as of the Closing.

(c) All actions, proceedings, instruments and documents required or taken in connection with or to carry out the transactions contemplated by this Agreement, and all other legal matters incidental thereto, shall have been satisfactory in form and substance to Buyer's counsel.

7. **Expenses.** Buyer and Seller will each pay the fee and expenses of their respective counsel and accountants.

Page 4 of 7



8. **Survival.** All representations, warranties, covenants and indemnities made by any party to this Agreement in connection with the transactions contemplated hereby, or in any exhibit, schedule, certificate, list or other document delivered pursuant hereto, shall survive the Closing.

9. **Notices.** All notice and communications to any party required hereunder shall be in writing and shall be delivered to such party at his, her or its address set forth at the beginning of this Agreement, or to such other address as such party may designate by notice given hereunder. Any notices and communications which are mailed, shall be sent by registered or certified first-class mail, postage prepaid.

10. **Assignment.** On or before the Closing Date, no party may assign his, her or its rights, duties or obligations under this Agreement. After the Closing, the terms, provisions, covenants and conditions of this Agreement shall bind and benefit the parties hereto and their respective heirs, successors, personal representatives and assigns.

11. **Counterparts.** This Agreement may be executed in two or more counterparts, each of which, when so executed and delivered, shall be an original instrument, but such counterparts, together, shall constitute a single agreement. A copy or fax of the original shall be considered an original for purposes of enforcement or proof of execution.

12. **Entire Agreement and Amendments.** This Agreement, including the exhibits, schedules and certificates referred to herein which are a part hereof, contains the entire understanding of the parties hereto with respect to the subject matter contained herein and may be amended only by a written instrument executed by all of the parties hereto, or their respective heirs, successors, personal representatives and assigns. There are no restrictions, promises, warranties, covenants or undertaking other than those expressly set forth herein.

13. **Governing Law.** This Agreement, the Note, the Security Agreement and the respective rights and obligations of the parties hereunder, shall be construed under and be governed by the laws of the State of Nevada without regard to principles of conflict of laws. Any action, claim or proceeding brought by any party hereunder shall be commenced exclusively in the courts of the State of Nevada, or the federal courts of the United States of America located in such State, and the parties hereto each hereby irrevocably and unconditionally consent to the exclusive jurisdiction and venue of such courts in any action, claim or proceeding brought under this Agreement.

14. **Headings.** Headings are inserted for convenience and do not form a part of the Agreement.



IN WITNESS WHEREOF, Seller and Buyer have caused this Agreement to be executed in their respective names, in person or by their authorized officers, as of the day and year first above written.

SELLER:
DAVID BROOKS AYERS

Print Name: DAVID BROOKS Ayers

BUYER:
ROBERT WILLIAMSON, III

_____

Print Name: _____

STATE OF NEVADA  )
         ) ss:
COUNTY OF CLARK  )

    On March 6, 2013 personally appeared before, me a Notary Public, ROBERT WILLIAMSON, III, who acknowledged that he executed the foregoing instrument.

_____
NOTARY PUBLIC

STATE OF _____ )
        ) ss:
COUNTY OF _____ )

    On March ___, 2013 personally appeared before, me a Notary Public, DAVID BROOKS AYERS, who acknowledged that he executed the foregoing instrument.

_____
NOTARY PUBLIC

AGREEMENT AND ACKNOWLEDGEMENT

It is also agreed and acknowledged that VICKI GUNVALSON ("Gunvalson") is currently a member of the Company and owns 33.33 % of the Company and Seller owns 16.67 % of the Company. Gunvalson agrees that she will not now or in the future sell, transfer, or gift any of

her ownership interest in the Company without obtaining the written unanimous approval of the other members of the Company. Any such transfer without written approval shall be deemed null and void. Gunvalson hereby consents to, and approves this sale and transfer of the Seller's member interest to Buyer.


VICKI GUNVALSON

*Victoria Gunvalson*


STATE OF _____ )
                                          ) ss:
COUNTY OF_____ )

On March ___, 2013 personally appeared before, me a Notary Public, VICKI GUNVALSON, who acknowledged that she executed the foregoing instrument.


*see attached Ca ack*               _____
                                                    NOTARY PUBLIC

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _ORANGE_ }

On _3-6-2013_ before me, _JUDY KEEGAN, NOTARY PUBLIC_
　　　　Date　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _DAVID BROOKS MYERS_
　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _Judy Keegan_
　　　　　　　　Signature of Notary Public

**JUDY KEEGAN**
Commission # 1863383
Notary Public - California
Orange County
My Comm. Expires Sep 5, 2013

Place Notary Seal Above

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____ | Signer's Name: _____
☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____
☐ Individual | ☐ Individual
☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact | ☐ Attorney in Fact
☐ Trustee | ☐ Trustee
☐ Guardian or Conservator | ☐ Guardian or Conservator
☐ Other: _____ | ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____ | Signer Is Representing: _____

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)　　　　Item #5907

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of ORANGE }

On 3-6-2013 before me, JUDY KEEGAN, NOTARY PUBLIC
Date                        Here Insert Name and Title of the Officer

personally appeared VICTORIA GUNVALSON
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
Signature of Notary Public

**JUDY KEEGAN**
Commission # 1863383
Notary Public - California
Orange County
My Comm. Expires Sep 5, 2013

Place Notary Seal Above

---

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

### Capacity(ies) Claimed by Signer(s)

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER — Top of thumb here

RIGHT THUMBPRINT OF SIGNER — Top of thumb here

Exhibit 3

**From:** "Richard P. Brull" <rbrull@brull-law.com>
**Date:** May 10, 2013, 4:53:35 PM PDT
**To:** "Stephen A. Crystal" <sac1109@aol.com>
**Subject: Vicki's Vodka.**

Dear Steve,

It has come to our attention that boxes for shipping Vicki's Vodka are being prepared that include Vicki's likeness.  Please be advised that Vicki's Vodka, LLC has no right to use Vicki's full name, her likeness or voice in connection with any goods or services without Vicki's prior written approval.
To date, other than the promotional appearances that Vicki has made on behalf of Vicki's Vodka, the only use that has been approved is the use of Vicki name in connection with the quote on the back of the Vicki's Vodka bottle.  Please have forwarded to me any use of Vicki's name, likeness or voice that Vicki's Vodka desires to use and I will let you know whether the use in question is approved.

Additionally, I have yet to receive the draft of the operating agreement that you were going to send to me some weeks ago.  Vicki is becoming more and more concerned about actions that Robert may be taking in connection with the company without her knowledge and/or approval.  It is imperative that we get the operating agreement wrapped up and work out any management issues there are between the parties so we can all move forward with the company.

Best,
Rick

Richard P. Brull
THE BRULL LAW FIRM, 1925 Century Park East, Suite 2300, Los Angeles, California  90067
Telephone: (310) 788-0820, Facsimile: (310) 553-4120

Exhibit 4

# SETTLEMENT AGREEMENT

This Settlement Agreement and Mutual Release (hereinafter "Agreement") is entered into on this, the ___ day of July, 2013, by and between, Robert Williamson III ("RWIII") and Victoria L. Gunvalson ("Vicki"), and the Claimants are hereinafter referred to collectively as "Settling Parties". The Settling Parties enter this Agreement individually, and on behalf of themselves and their respective principals, agents, attorneys, officers, directors, shareholders, servants, representatives, employees, members, partners, subsidiaries, affiliated companies, insurers, predecessors, successors-in-interest and assigns. The Settling Parties intend that the terms of this agreement and underlying transactions remain confidential.

## 1.0    PARTIES' REPRESENTATIONS

Each Settling Party represents as follows:

     (a)    That this Agreement will be binding upon it when executed; and

     (b)    That the representations set forth herein shall endure forever and shall survive the execution of this Agreement and the settlement, as more fully described below.

## 2.0    RECITALS

2.1    WHEREAS, it is the intent of the Settling Parties to fully and finally resolve any and all of the claims at issue between them in order to preclude any potential future litigation between and among the Settling Parties, all terms of this Agreement are to be construed so that their meaning will effectuate this intent.

2.2    WHEREAS, the Settling Parties each recognize that any future litigation among them would require substantial time, effort, and expense unless their claims are settled and terminated between and among them at this time.

2.3    WHEREAS, the Settling Parties wish to reduce to writing the full terms of their Agreement.

## 3.0    NO ADMISSION

In making this Agreement, the Settling Parties do not admit the sufficiency of any claims, allegations, assertions, contentions, or positions of any other party, or the sufficiency of any defenses to any such claims, allegations, assertions, contentions or positions. Further, in making this Agreement, the Settling Parties agree that the covenants and releases comprising this Agreement are not intended to be admissions of liability, negligence, willful conduct, breach of contract, bad faith conduct or fault of any kind whatsoever. The Settling Parties hereto desire to resolve the instant action in an amicable fashion. The Settling Parties have entered into this Agreement in good faith and with the desire to forever settle as between them all claims and to execute a Release as set forth in Paragraph 4.0 below.

## AGREEMENT AND RELEASE

WHEREFORE, in consideration of the covenants and agreements expressed herein, and the recitals set forth above, which form a part of, and are incorporated into this Agreement, the Settling Parties hereto agree as follows:

## 4.0      SETTLEMENT TERMS

4.1    Vicki will continually promote Vicki's Vodka ("VV") in every possible public outlet, Blog, facebook, television, interviews, Real Housewives of Orange County ("RHOC"), etc.;

4.2    Vicki will initiate Tweets about VV and timely re-tweet upon request;

4.3    Vicki will increase personal appearances for bottle signings and/or similar events with a minimum number to determined on a monthly basis by VV;

4.4    VV and parties related to VV will contact Vicki to schedule her commitments to events and if no written objection is received within 72 hours of the communication then it will be considered a firm commitment to attend by Vicki. VV will make an attempt to give as early notice as possible of upcoming commitments for Vicki with at 4 weeks' notice during the months of September through January, if possible.

4.5    Vicki will be present for entire duration of all tradeshow events and other events that she commits to attend;

4.6    There will be a penalty to Vicki of $5,000 (+/-) for each appearance or/day (whichever is  greater monetary penalty) which Vicki commits to and fails to attend;

4.7    There will be a penalty to Vicki of $20,000 (+/-) for appearances made by Vicki to represent VV if Vicki invites or associates with David Brooks Ayers while at the event;

4.8    Vicki will notify VV as early as possible in advance of any media appearances to allow VV to promote products in coordination with appearance;

4.9    Prompt response to all emails from VV and parties related to VV by all parties (no more than 72 hours);

4.10   Vicki will not make any derogatory or disparaging remarks about VV, RWHI or any other parties related to VV;

4.11   Vicki allows usage of her name, likeness and image for VV exclusively;

4.12   Vicki reaffirms that VV will be headquartered and operated in Clark County, Nevada for tax purposes and other reasons, that the LLC has been formed in Nevada for this purpose and any and all related accounts and further dealings will be initiated in Nevada;

4.13   Vicki will not be involved in daily operations of VV, she will only by the face and celebrity and consulted for creative opinion with regard to VV;

4.14   When VV raises outside capital and does stock sale, Vicki and Robert will each contribute exactly equal amounts of stock in an amount to be determined by VV. When this is completed, Vicki will be paid back the $12,500.00 she loaned to VV and Robert will be paid back all of the funds that he loaned to VV. All other funds that are netted from the stock sale/capital raise after Vicki and Robert are paid back for their loans will go back into VV;

4.15   When negotiating contracts for future seasons of RHOC, Vicki will make a good faith effort to include VV;

4.16   Damages in the amount of $121,000.00 with $12,500.00 paid immediately upon execution of this Agreement, $12,500.00 within ninety (90) days of execution of this Agreement and $2,000.00 per month for forty-eight (48) months commencing ~~August~~ 2013. *October 15 per VI*

4.17    Settling Parties agree to dismiss Vicki from the Federal Court case styled as Case No. 2:31-cv-01019-RCJ-GWF within ten (10) business days of execution of this Agreement.

## 5.0    APPLICABLE LAW

This Agreement is made, executed and entered into and shall be governed by the laws of the State of Nevada.

## 6.0    NOTICES

Any notice required in connection with this Agreement shall be given in writing and shall be deemed effective upon personal delivery or three business days after deposit in the United States mail, registered or certified, postage prepaid and addressed to the party entitled to such notice at the address indicated below such party's signature line on this Agreement or at such other address as such party may designate by ten (10) days' advance written notice under this to all other parties to this Agreement.

## 7.0    INTEGRATION

This Agreement contains the entire agreement and understanding concerning the subject matter herein and supersedes and replaces any prior negotiations and agreements between the parties hereto, or any of them, whether written or oral.

## 8.0    ATTORNEYS' FEES

Each of the Settling Parties agrees to bear their own attorneys fees with regard to the aforementioned litigation and this Agreement.

## 9.0    SEVERABILITY

In the event that any one or more of the provisions of this Agreement shall be declared invalid, illegal, or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not be in any way affected or impaired thereby.

## 10.0    MODIFICATIONS

Any alterations, changes or modification of or to this Agreement in order to be effective, shall be made by written instrument or endorsement thereon and in each such instance shall be duly signed on behalf of each party hereto.

## 11.0    CONFIDENTIALITY

The parties hereto shall in no way publicize to any individual or entity not a party to this Agreement the terms of the Agreement, except as required by operation of law (including public reporting requirements under federal securities laws), or except to such parties' lenders, accountants, agents, officers, shareholders, employees, representatives or consultants.

IT IS AGREED.

DATED this 15 day of July, 2013.          DATED this 15 day of July, 2013.


_____          _____
ROBERT WILLIAMSON III                     VICTORIA L. GUNVALSON



Exhibit 5

**Rufus-Isaacs, Acland & Grantham** LLP

232 N. Canon Drive
Beverly Hills, CA 90210
t: 310.274.3803
www.rufuslaw.com

June 12, 2013

**VIA E-MAIL AND FACSIMILE**

H. Stan Johnson, Esq.
Cohen-Johnson, LLC
255 E. Warm Springs Rd., Suite 100
Las Vegas, NV 89119
Facsimile: (702) 823-3400
E-Mail: sjohnson@cohenjohnson.com

     Re:    *Williamson v. Gunvalson and Ayers*, USDC (Nev.), Case no. 2:13-cv-
              01019 ("Action")

Dear Mr. Johnson:

I represent Victoria Gunvalson and Brooks Ayers, and have obtained a copy of the
complaint in the Action that you filed on Robert Williamson's behalf on June 7.[1]

The primary purpose of this letter is to put you on notice that the complaint lacks any
basis in fact, and is legally deficient in many respects, and to demand that you dismiss
the Action forthwith. The frivolous nature of the complaint, and the fact that it was filed
without any attempt on your client's part to contact Ms. Gunvalson to discuss whatever
issues concerned him, strongly suggest that his strategy is to cause maximum
embarrassment to my clients by making false and inflammatory public allegations
against them in the complaint.

Another worrying fact is that on April 25, Mr. Williamson formed (through your office) a
Nevada entity called Vicki's Vodka LLC ("VVNV"), without notifying Ms. Gunvalson. We
strongly suspect that he has abused his de facto control of Vicki's Vodka LLC ("VVCA"),
the California entity in which Ms. Gunvalson has a significant interest, by transferring its
assets of to VVNV.

---

    [1] All dates are in 2013 unless otherwise indicated.

8563.2.1d

H. Stan Johnson
June 12, 2013
Page 2

The unfortunate impression caused by these actions is that Mr. Williamson wants to deprive Ms. Gunvalson of her interest in the Vicki's Vodka business, and to use the Action to force her into making concessions that she otherwise would not make.

Please allow me to correct the many misstatements of law and fact that appear in the complaint.

1.     <u>THE FACTS.</u>

Discussions between our clients about establishing a business called Vicki's Vodka started in Los Angeles in February 2012. They later attended a meeting in Las Vegas in June 2012, at which time it was agreed, in summary, that Mr. Williamson would fund the business, Michael Nicholson would be CEO, Mr. Ayers would help with marketing, and Ms. Gunvalson would be the spokesperson for the product.

On June 5, 2012, Mr. Nicholson caused the Articles of Organization of Vicki's Vodka LLC, a California limited liability company ("VVCA"), to be filed with the California Secretary of State. As you are aware, such Articles consist of a one page form, and the detailed terms governing the ownership and management of an LLC are normally set forth in an operating agreement. Although, in the case of VVCA, no operating agreement was ever executed, the correspondence between the parties clearly establishes that both Ms. Gunvalson and Mr. Williamson were to participate in the management of the company. Mr. Williamson, however, was managing the business without any supervision or accountability.

Ms. Gunvalson has fully performed all tasks that she agreed to perform relating to VVCA to the extent required. She invested $12,500 of her own money, which was deposited into a bank account in VVCA's name, and has been used for unknown purposes. She was willing to invest a further $12,500, had she been asked to do so. She contacted a cigar company who expressed interest but said that until the vodka brand was established, an expansion into cigars would be premature. And she has created a considerable amount of publicity for the product on Real Housewives Of Orange County ("Show"), in public appearances and online. Such publicity is, of course, her real value to the business. In particular, but without limitation, she persuaded the producers to introduce Vicki's Vodka as an element in the Show, which resulted in the Show being filmed for two days in Napa Valley, where the vodka was being distilled, and in the season's finale party at her house, she served the vodka and gave two bottles as a gift to each guest. Though she does not control the final edit, Ms. Gunvalson believes that these events will be included in episodes of the Show that will be broadcast in the next few weeks. Moreover she appeared on the Andy Cohen Show on BRAVO and promoted the product.

Since Mr. Ayers did work for VVCA without compensation, Ms. Gunvalson agreed to give him a portion of her ownership interest, i.e., 16.67%. She was not restricted from

H. Stan Johnson
June 12, 2013
Page 3

transferring her interests in any way, and Mr. Williamson knew from the outset that Ms. Gunvalson was going to give Mr. Ayers a portion of her interest in recognition of his work. Thus to allege that the transfer was done without Mr. Williamson's knowledge or approval is not only factually incorrect, but is meaningless as a matter of law because he had no right to be informed nor any right of approval.

Mr. Nicholson did not perform as expected, and agreed in or about August 2012, to give up his ownership interest in VVCA. This resulted in Ms. Gunvalson and Mr. Williamson each owning a 50% interest.

Your allegation that Mr. Ayers wanted money to avoid going to jail for non-payment of child support is utterly baseless, and was clearly included in the complaint in an attempt to embarrass him. He and Mr. Williamson were close friends for a while.[2] During a conversation in March, he was talking to Mr. Williamson about the fact that he wanted to get sole custody of his young son, and wanted to liquidate some assets to free up cash to obtain a lawyer. Mr. Williamson was willing to help him and initially said that he valued VVCA at $1 million, but when Mr. Ayers suggested that Mr. Williamson purchase 5% of the business for $50,000, Mr. Williamson revised his position and said he wanted Mr. Ayers' entire 16.67% interest in return for $50,000. Such is the manner in which Mr. Williamson operates.

Your claim that my clients engineered this purchase as a way to obtain money from Mr. Williamson "in bad faith," in that they had "no good faith intent to move forward with the company and make it successful," is absurd and has no basis in fact. What evidence do you have to support such an allegation, even if it is made upon information and belief?

As for Mr. Ayers, Mr. Williamson insisted that an express condition of the sale was that Mr. Ayers should play no ongoing role in the operation of the business.

As for Ms. Gunvalson, she continued to actively promote Vicki's Vodka after the sale of Mr. Ayers' interests to Mr. Williamson. For example, on March 20 (i.e., about 2 weeks after the membership Interest Purchase Agreement was signed on March 6), she spent a full day (10 hours) at the Nightclub and Bar Owners convention in Las Vegas, walking the floor to meet with vendors and distributors and promote the vodka, thereby generating considerable publicity. Then, on April 1, she flew to New York and appeared on Andy Cohen Show where she promoted the vodka; and on April 2, she appeared on Joy Behar's show and again promoted the vodka. Mr. Williamson was well aware of her efforts and texted her on April 3 saying that she had been "FABULOUS!" on the Joy Behar show, as evidenced by the thread of text messages attached hereto marked "IM

---

[2] Earlier this year, for example, when Mr. Williamson was recovering from surgery in San Diego, Mr. Ayers twice stayed with him overnight in his hospital room, sleeping on a chair.

H. Stan Johnson
June 12, 2013
Page 4

Messages 1-4." He will no doubt look forward to explaining in deposition and before a jury how he could be so effusive about her promotional efforts in early April, but now claims that she had been acting in bad faith and had abandoned the business.

Ms. Gunvalson was aware that Mr. Williamson bought Mr. Ayers' interest in VVCA and understands that Mr. Williamson now has a 66% financial stake in VVCA. She has never demanded that he give up that stake. All that she requested is that she and Mr. Williamson share control of VVCA on a 50-50 basis. There is nothing unusual or unreasonable about this - you are no doubt aware that financial interests in an entity, and the right to control that entity, are often held in different percentages.

Despite her continued good faith efforts to promote the product, Ms. Gunvalson became increasingly frustrated with Mr. Williamson's lack of responsiveness and other behavior. She wrote him a lengthy email on April 6, setting out the problems she had with the way in which he was operating VVCA, including the following:

"Regarding Vicki's Vodka, LLC – here are my questions:

1.     To this date, I do not have a copy of the business plan and marketing plan.  I'm assuming this was completed and if not, it needs to be a high priority that this gets finished.

2.     Where are we at with the Distribution channel being set up?  When will distribution take place?   Who are we using?

3.     What is our sales projection for Q3, Q4, Q1 & Q2 2014?

4.     I have over 40 boxes of glasses and pitchers in my garage that must be moved out immediately.  Due to the fact I live in the country, mice and rats are nesting in them and I need to get them out as soon as possible.  Please let me know how and where to send them.

5.     Vicki's Vodka checking account is not being used for any payroll or expenses therefore I have no knowledge on what is being spent or how much has been infused into the company.  Shouldn't you be running all deposits and expenses thru the company account?  Why would you not?  This needs to be operated like a business.

6.     Operating Agreement – this needs to be addressed and completed and I need to remain 50% as we discussed.  Rick will be addressing this with Steve this week.

My reputation and brand is on the line with launching Vicki's Vodka to the world this season and I want to be sure everything is set up correctly now

H. Stan Johnson
June 12, 2013
Page 5

before we move forward with the distribution.  We must have a solid
business plan in place…"

In a text message on April 17, Mr. Williamson promised to provide her with answers to
these questions by April 21, but he did not do so. In fact, despite several follow up text
messages from Ms. Gunvalson expressing her frustration at his lack of responsiveness,
but affirming throughout her willingness to continue the business once these problems
had been sorted out, he never responded at all. A string of these text messages is
attached hereto marked "IM Messages 1-9."

Instead of behaving in a straightforward manner and responding to Ms. Gunvalson's
concerns as he had promised on April 17, Mr. Williamson went behind her back and
incorporated a Nevada limited liability company, coincidentally called Vicki's Vodka LLC
("VVNV"), on or about April 25, through your office. We strongly suspect that Mr.
Williamson has surreptitiously transferred the assets of VVCA to VVNV, and that his
intent is to own and operate the business without Ms. Gunvalson, who has lent her
name and reputation to the business, as well as working hard to promote it. Is this
correct? If so, this is egregious and despicable conduct by Mr. Williamson that will form
the basis of a cross complaint for breach of fiduciary duties, diversion of corporate
opportunities, unjust enrichment, unfair business practices, and numerous violations of
the California Corporations Code, unless this Action is dismissed forthwith.

2.      **LEGAL ANALYSIS**

2.1     **Breach of Contract.**

The breaches alleged in ¶27 have no basis in fact. In particular, what breach of contract
do you claim that Mr. Ayers has committed? Clearly he has not committed any such
breach, nor harmed Mr. Williamson in any way.

Most of the alleged breaches by Ms. Gunvalson purportedly arise from her failure to
promote the vodka. But as set forth above, she has promoted the product with alacrity
until she became intensely frustrated by Mr. Williamson's lack of responsiveness.

The fact that Ms. Gunvalson's entertainment counsel, Richard Brull, emailed Mr.
Williamson's transactional counsel, Stephen Crystal, on May 10 informing him that
VVCA could not make any further use of Ms. Gunvalson's name or likeness unless she
gave her prior written approval, is not a breach of any agreement. Ms. Gunvalson was
not refusing to allow VVCA to use her name and/or likeness to promote the product, but
through Mr. Brull, she was insisting, as had been made clear at the outset, that any
such use of her name and/or likeness had to be approved by her in advance. To label
such a communication a "cease and desist letter" is a blatant mischaracterization of that
term. And rather than contacting Ms. Gunvalson to try to resolve whatever differences

H. Stan Johnson
June 12, 2013
Page 6

existed between them, Mr. Williamson acted preemptively by filing a complaint that makes these meritless but embarrassing allegations against my clients.

As for the allegation that she failed to promote the product in social media, Ms. Gunvalson's social media outlets have frequently referred to the vodka, and there is still a link on her official website to the VV website. The failings in this area lie with your client, in that he and his wife, who have the responsibility within VVCA for social media, have not "tweeted" since April 2.

### 2.2    Breach Of The Covenant Of Good Faith And Fair Dealing

There are no specific allegations of breaches of the covenant of good faith and fair dealing under this cause of action. My clients absolutely deny any bad faith conduct on their part, and as will emerge during the course of the Action if it is not dismissed, such conduct was exclusively within the domain of Mr. Williamson.

### 2.3    Fraud,  Promissory Estoppel, Etc.

The complaint is deficient because it fails to satisfy the requirement in the federal rules of civil procedure, that the circumstances of the fraud must be stated with particularity. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) No doubt your client  is reluctant to do so in a complaint that he has chosen to verify under penalty of perjury.

### 2.4    Unjust Enrichment

There is no dispute that Mr. Ayers' interest in VVCA was transferred to Mr. Williamson. The theory that the sale of those interests was motivated by a desire to deprive Mr. Williamson of the value of what he paid is an absurdity that crumbles when faced with the numerous significant promotional activities that Ms. Gunvalson performed AFTER the Membership Interest Purchase Agreement was signed on March 6.

### 2.5    Civil Conspiracy

An actionable civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Hilton Hotels v. Butch Lewis Productions*, 109 Nev. 1043, 1048, 862 P.2d 1207, 1210 (1993). You have no evidence to support such a theory.

///

///

///

8563.2.1d

H. Stan Johnson
June 12, 2013
Page 7

### 2.6    Attorney's Fees

Attorney's fees are an element of  damages, not a separate cause of action, and in any event, you fail to plead any basis for such a claim. This cause of action is also deficient in law.

## 3.    CONCLUSION

We demand that the Action be dismissed immediately. If it is not, my clients reserve their rights to file a cross complaint, seek Rule 11 sanctions, and file a suit for malicious prosecution after they have obtained judgment in this Action.

If you are intent on pressing on with the Action, it will be vigorously defended but I am authorized to accept service on my clients' behalf.

This letter is not intended to be a complete recitation of the facts and theories arising out of this matter, and is without prejudice to my clients' rights and remedies, all of which are expressly reserved.

Very truly yours,

RUFUS-ISAACS ACLAND &
GRANTHAM LLP

Alexander Rufus-Isaacs

ARI:ari

cc:    Clients

8563.2.1d